He has 21 years of experience in law enforcement, 17 as a patrolman and a detective, and he He was also a member of the Edison PBA, the exclusive majority representative of the police officers employed by the township, and he served two terms as the president of the union, the most recent term concluding shortly before these events began. In our complaint, we filed two counts under 1983, one for violation of his due process rights in the way he was terminated, and the other, a First Amendment, 14th Amendment, 1983 claim alleging that the motivation for the actions taken against him was retaliation for his activities on behalf of the PBA and in certain other areas. The case was brought before Judge Martini below on initial motions suggested by the magistrate before there was ever any discovery. There had been some document production. Excuse me? Some documents. Yeah, there was some initial exchange of documents, right. That's correct. We filed, plaintiff filed, a motion for partial summary judgment or in the alternative, a motion for preliminary injunction based only on the due process claim. Our position is straightforward in that regard. Our position was that since Officer Torriello was still in the employ of Edison Township on December 2nd, 2004, the date he was terminated, the township could not unilaterally take action against him to terminate him by simply removing him from the payroll. And that's when Judge Martini started to get a little mad at you. Yes, he did. Because he said, well, you're forgetting all about the memorandum of understanding. Right. Which, for lack of a better word, trumps any prior right that you have. Yes. So why don't we go right to the memorandum of understanding? Well, the memorandum of agreement is, does not, in our opinion, waive or constitute, waive any of Officer Torriello's due process constitutional rights. Judge Martini relied upon Booth v. Cherry Hill, and I think in his opinion he may have also cited Leonie v. City of Pittsburgh. Both of those cases are cases in which the officers had already left the employ of the municipality, and therefore they had given up their employment and therefore their property interest in their employment. Well, didn't you do that by signing the memorandum of understanding? Not at all, Your Honor. The issue and the disagreement that we have, one of the disagreements that we have with Judge Martini's decision below, is that as long as someone remains a public employee, a tenured public employee, which no one disputes that Officer Torriello was, that then a township cannot, or any public employer, in New Jersey certainly and probably anywhere in the United States, cannot simply declare that person to be no longer an employee. The township should have done what they ultimately did in the federal district court, bring on some action in which they would have said, Officer Torriello, you are hereby deemed to have been retired. You have an opportunity for notice and a hearing and a testimony. I apologize. It's a memorandum of agreement, not a memorandum of understanding. You really are treating it as if it's a nullity. I mean, isn't your argument here, which becomes softball, isn't your argument here that the memorandum was breached? Yes. And that's a question of fact. Yes. And it was decided as a matter of law on a sui sponte motion for summary judgment. Your Honor, I agree with you 100%. Why don't you argue those issues? Okay, I will definitely. I will move to those issues. That was a softball. Excuse me? That was a softball. Thank you. I appreciate it. And I agree. During the argument, well, Judge Martini decided the issues as matters of law. We submit, under all the relevant case law, Williston, all the various horn books, it's black letter law, that issues of breach and whether that breach is material are questions of fact for the jury. We had absolutely no discovery. To compound the error below, Judge Martini chose to do that on a sui sponte motion after argument was already completed. The fact of the matter is that at page 419 of our appendix, which is the transcript of the oral argument, the judge actually tried to get Mr. Giacobbe to introduce that concept, and Mr. Giacobbe, to his credit, said, even if Your Honor finds for us specific performance on the MOA of April 6, 2004, Mr. Lehman still, or the Office of Torriello, still has other issues remaining, such as retaliation. That hasn't been argued or approved. Yes, and he, so I'm not citing Mr. Giacobbe for authority, but I certainly am citing him for the fact that even defendants didn't believe that this case was just a one-issue case. We filed a motion for partial summary judgment. We acknowledged that the issues of retaliation, free speech, and the state claims related to those all remained for trial, and we never got a chance. The judge, he relied upon the Gibson case, but I would submit, and Judge Salvatore, I believe you were part of that panel, the Third Circuit's decision in Cornerstone. If it was a First Amendment case, I was part of the panel. In the Cornerstone case, specifically limited very much the ability of any trial judge to enter into these types of matters sui sponte, and cautioned relying upon Rule 56C, which provides notice, again, elemental due process, it seems to be a threat in this case, an opportunity to make those arguments. We never even addressed them in our brief or an oral argument, and we never knew about them until the judge issued his decision. The judge even went further. We had raised an argument in our brief below that defendants had not pled specific performance. They had filed the motion at the suggestion of the magistrate, but their pleadings never mentioned specific performance either as an affirmative defense or a counterclaim. I submit it's a counterclaim, not an affirmative defense. At the end of the argument, Judge Martini suggested to counsel that they would want to amend their complaint to include an affirmative defense of specific performance. But then in his sui sponte action, he went much further. And the reason, so on that ground alone, we believe the matter has to be remanded and there have to be issues decided. But we also submit, Judge Barry, that the due process issue is relevant to the question of whether Officer Torriello should be reinstated with some or all back pay while this case goes on. You're looking for reinstatement, but he signed a memorandum of agreement to leave. Well, I agree, but, Your Honor, if we are successful in proving that there was a breach, that the township, there's only one element of that memorandum of agreement, contrary to what Judge Martini said, and he was making many, many assumptions, which are nowhere yet established. There's only one paragraph of that agreement that benefits Officer Torriello. That is that all pending investigations against him would be closed. And that was what he bargained for on April 6th. Whether that was a good bargain or a bad bargain, obviously it was a bargain. But on June 11th, approximately two months later, they breached. Why didn't you raise the issue of breach until months later? Well, I was not his attorney, but the real issue is, and the question of his involuntary disability pension application was still pending. And so that was decided in November. The township then contacts him and says, Our application, the township's application, to have him declared incapable of being a police officer was denied by the New Jersey Division of Pensions. Their independent psychologist found him perfectly fit for duty. At that point, the township says to him, Okay, now paragraph 6 comes into effect. And he says, No, you've breached. And he comes to our office. We sent a letter on December 3rd, and we sent another letter on December 30th, after he had been terminated, and said, You can't do that. And so the judge below made much of the fact that his prior attorney, when he got the notice on June 11th of the charges, wrote a letter and said, Tell me when you want to hear these. That doesn't mean that he wouldn't have argued at that hearing that the breach by the township in filing the charges meant they couldn't pursue them. We have no idea what he would have argued. He didn't waive the breach. No. And certainly not in the clear, concise, and intelligent way in which a waiver of constitutional rights must be granted. It must be done. In Booth and in Lenahee, those individuals retired. You keep going back into constitutional rights. We're really dealing here, in my view only, with a contract crime. Now, didn't he apply for a service retirement afterwards? Yes. We wrote a letter to the township, and we said that he has no income. Therefore, at this point, since he had over 20 years, he was entitled to submit a service retirement. We were doing that without prejudice to his ability to maintain all of his ordinance. But you say you want him reinstated. Once he filed for the service retirement, can he really get reinstated? Yes, he certainly can. There's absolutely no reason he would not. His back pay award would certainly be mitigated by any pension contributions that he has. The New Jersey pension law permits someone to withdraw their pension, and it doesn't require anyone to be destitute while they fight what they believe to be an illegal termination. Anyone who has a police officer who has 20 years of service or more can retire on a pension. If one wins, there are many instances in which someone is terminated with more than 20 years of service. The matter either proceeds to arbitration under the grievance arbitration provisions of the contract, to the New Jersey Department of Personnel under civil service, or to the courts in a non-civil service municipality. And while that litigation goes forward, the person does what he has to do to live. If he wins and gets reinstated because the charges were found to be invalid, he rescinds his retirement, repays pensions for all of his money, because the township isn't entitled to the credit because the state paid the money, not the township, repays all the money, and gets reinstated with his back pay. Are there any cases holding this that we could refer to? That was never an issue in the matter, so I didn't brief it, but I will gladly supply. I mean, again, I don't want to cite Mr. Giacobbe as an authority, though I respect him a great deal. Those of us that practice in this field, it's not an uncommon situation, and I would be glad to. I suppose we wouldn't have to get there if we decide that there was a factual issue as to breach and it should go back. Well, there's no question that I agree with you, Judge Barry, that if you decide that there is a factual issue as to breach, the case must be remanded. That does not, I submit, answer the question of what happens to Officer Torriello in the interim, from what should have happened from December 2nd, 2004, at least until – But that's not for us. That's not for us to decide, is it? Yes, I think it is. That is due process. Why isn't that for the district court? Well, I think – I mean, you're saying the district court made a mistake, and don't we then have to just – If we agree, we send it back. And you can raise all that before the district court? Well, I certainly – that's certainly an option, but I would submit – Good option for us. Yes, okay. Well, I can live with that option, Your Honor. I certainly can live with that. I'm not going to look at – I'm certainly going to give you an affirmative answer on that. But I would also submit that the question of whether a public employer can use self-help or can unilaterally terminate somebody without any semblance of due process, notice, any provision for a hearing, anything is so clear as a matter of law that you, in fact, could decide it if you chose to reach it. But that's clearly within your discretion. Thank you. I think your time is up. We'll get you on rebuttal. Okay, now we'll hear from the expert. Good morning, Your Honors. Matthew Giacobbe on behalf of the College of Medicine. I'm flattered that I'm an associate colleague, and I've written a lot of treatises on this. I just can't find any of them in my wall library. But let me – I think that Your Honors are correct. You mean it's like if a tree falls in the forest and there's no one there to hear it, as it may sound? Exactly. This is a simple case. It's a contract case. That's all it is. It's a simple contract, and you don't get to the constitutional due process claims until you apply the contract claims. And what happened with Judge Martini is Judge Martini said – and recall, this was not a motion to dismiss. This was plaintiff's motion for summary judgment. Partial. Partial. On the due process claims seeking specific performance. He put forth the contract and was asking Judge Martini to make a ruling on the contract to get the performance that he wanted. And Judge Martini had a full opportunity to read the briefs of both sides, as did the plaintiffs. And what the Cornerstone case says is if it's a purely legal question – Is breach a purely legal question? Well, Your Honor, the issue of breach here, there wasn't a breach. Because if you look four corners of the – But that's a question of fact. Breach is a question of fact. And I don't think that there was ever – You don't even have to get the issue of breach at all because based on the four corners of the contract, what took place, the contract was fulfilled by both parties. That contract is so muddy. I don't know what's included. That's just speaking only of what isn't included. But look, to me, an important part of this case is the sua sponte grant of summary judgment. There has to be a purely legal question, which, frankly, I think there's a question of fact as to breach, a fully developed record. Here there were no depositions, no interrogatories, just exchange of a few documents. And Torriello was clearly prejudiced because the case got thrown out. And those are – We do not prefer to dispose of claims, our cases say, on a sua sponte grant of summary judgment. And that's what we've got before us here. And I understand that, Your Honor. And Mr. Lehman's exactly right. When the judge raised the issue, our issue in response to Mr. Lehman's argument was a specific performance. The judge, Judge Martini, did ask for a ministerial act of, will you amend your answer to assert affirmative defense of a specific performance. We did that. We had already briefed that before the judge. That's how it came before him. But I think that Your Honor's right. Can I just ask you about the breach issue? You've passed that by. The contract certainly says or suggests that all disciplinary charges will be dismissed and there won't be anything else. And then they bring a disciplinary charge against him, and he says, well, you've breached the contract. Why isn't that an issue of fact? Well, Your Honor, first off, the contract says all pending disciplinary charges. Okay, so isn't the contract ambiguous? What's that? Isn't the contract ambiguous? I don't believe it is ambiguous. Well, but the other side certainly has a very different interpretation of it than you have. I understand that. And isn't this ambiguity of the contract something that's got to be resolved before summary judgment is issued? I don't think so, Your Honor. And the reason I don't think so is that the ultimate goal here was that when Mr. Torrio's employment ended, that he would get either a disability retirement or an ordinary retirement. And he'd have no more disciplinary actions against him. Right. And then you file a disciplinary action. And you're saying, well, we're justified in doing that by the terms of the contract. And he says you're not justified by doing that according to the terms of the contract, and therefore don't you have an ambiguity in the terms of the contract? What's interesting is that the Italian attorney who filed the charges did so and they were not pending at the time. They were new charges. Did so under the 45-day rule, which is mandated under 40A to preserve a charge. It's also mandated under 40A. But you had agreed not to file any charges. It said they would dismiss all pending charges. And were these pending? Isn't that a question? No. That could be a question, Your Honor. That's a question. It's another question of fact. It's ambiguous. I find I don't even know, in looking at Paragraph 3, what are all disciplinary charges. What do you mean by all? I mean, I see one. Including those that will be closed. Paragraph 3 to me is very ambiguous. Well, Your Honor, I'm not going to contest the fact that the prior counsel who drafted the agreement didn't do it so awfully. I'm not going to dispute that with you. But what I am going to argue is— You don't have prior counsel to complain to. It's great. It's great when we can point fingers at somebody else. But at the end of the game, what was the ultimate goal here? He agreed to retire under either an ordinary disability retirement where he'd get health benefits. And if that didn't happen, he would then retire under an ordinary service retirement as a matter of law. He was fully vested. He got the retirement. What he bargained for, he got. The charges were not prosecuted. They were merely filed. And under 48-14-147, which is cited in Mr. Lehman's brief quite extensively, not only do you have to file them within 45 days, you have to prosecute the charges no sooner than 10 days after filing, no greater than 30 days. By the time Mr. Lehman wrote his letter in December of 2004, that was way after the charges were filed in June, six months. But if those were part of paragraph 4, pending investigations, they should have been closed under the agreement. And they were never prosecuted. And he had dropped his objection to the charges. Yeah, he never objected to them whatsoever. No, I mean to the earlier pending. As part of this agreement, he dropped the pending charges that they were actually prosecuting against him. He was performing the contract. In any event, the cross complaints were not disciplinary charges. They were. I understand that. But if you look at what happened here, though, is that they took a ministerial act of filing charges. They did not prosecute them. If they prosecuted charges or attempted to prosecute charges, I would say that there was a breach. There was no breach. He was represented by the union. He was represented by counsel. They only raised the issue of breach once he did not get the disability retirement. And he didn't get his disability retirement. And the reason they were upset is if you get a disability retirement under the CBA, you get lifetime health benefits. The moment he didn't get his lifetime health benefits, all of a sudden, there's a breach. Six months ago, you breached it because you had a ministerial act of filing charges that you never prosecuted. But you never say this is a ministerial act. As a matter of law, we couldn't prosecute them because the 30 days after they had been filed, we never had a hearing. So as a matter of law, we waived our right to ever prosecute those subsequent charges against this client under 48-14-147. It's got to be within 10 to 30 days. If you're outside that frame, unless you get their consent, they're waived. So they were waived as a matter of law, and he ultimately got what he bargained for. He retired. Well, what about the retaliation claims? Your Honor, as I told Judge Martini, that was not briefed beforehand. And I don't think it needs to be. Shouldn't they be reinstated? No, I don't think it should be reinstated because what's the fundamental issue here is at the heart of this entire case is a contract. And the issue is did Mr. Toriello, with advice of counsel and advice of his union, waive his constitutional rights, the procedural due process, and his constitutional property interest in his job? And the answer to that is he did. He did it full-knowing, with advice of counsel and the union present who signed the agreement waiving his right to his constitutional property interest in his job as well as his procedural due process rights. But if you breached, then he's excused from any future performance under the law, isn't he? If it was a material breach, he would be excused from fulfilling his… If we had a material breach, we filed charges and prosecuted charges against them and ignored the parameters. Or, for example, Judge, let me give you a better example. That agreement mandates that the town of Edison would file for the involuntary disability application. If the town of Edison said, we're not filing it, too bad, that's a material breach. That would be a material breach. And that would then allow Mr. Toriello to say, you breached the agreement, we're done, I'm employed, and if you want to get rid of me, bring me up on due process. But he's saying that you did breach. You did file for him, but you breached in another respect. And that, he's arguing, is a material breach that excuses him from performance as well. Well, Your Honor, I think that two things. I think that if there was a breach, and he truly believed there was a breach, either him or the union or his counsel would have raised that in June of 2004. They wouldn't have waited until December of 2004. I think what we're told today is when I asked that question of why it wasn't raised sooner, because they didn't want to compromise the application for the involuntary disability retirement, in which he would get health benefits and he wouldn't otherwise, probably. Well, the determination of the involuntary disability retirement is not made by the town of Edison. Well, we don't know. And we don't know what was in his head when he signed the memorandum of agreement either. You're absolutely correct. And neither did Judge Martini, and neither do I. What I do know is what does the memorandum of agreement say? And I think what Judge Roth had asked is about the retaliation claims. I think that Judge Martini's ruling saying that this contractual issue, if resolved, resolves all issues, because you don't get the retaliation claim if this is a pure contract. He waived his claims. He gave up his employment. And that's what he did. But I truly believe that the materiality of the breach, if there was a breach, it has to be material. And you have to look at, did Mr. Toriello get what he bargained for? And the answer to that question is absolutely yes. He agreed in paragraph 6 that if the involuntary disability retirement was not granted, he will file. You could be right at the end of the day. You may well be right at the end of the day. My question, speaking only for myself, is whether a sua sponte grant of summary judgment should have been done here, whether there should have been a sua sponte where there wasn't really discovery and where there were fact issues. At the end of the day, you may well be. I don't know. Judge Berry, my response to that would be that if this was a motion to dismiss, if this was some procedural motion, I would agree with you. I would say a sua sponte summary judgment motion would be inappropriate. But in this case, the very issue, the issue of procedural due process under the agreement was raised by the plaintiff's counsel. They filed the motion. We got it before Judge Martini, not on my motion, on the plaintiff's motion, on the issue of this contract and its interpretation. And based on that fact, Mr. Lehman, what Cornerstone says is, did the plaintiff or the non-moving party have the ability to put their best foot forward? They absolutely did. They filed the motion. But didn't the district court interpret the contract according to your version rather than according to the plaintiff's version? No, I think the district court interpreted the contract on its face, which is that Mr. Toriello agreed he gave up his right to his job and he would either end up with A, an ordinary retirement, or B, a disability retirement. It was A or B, and he got A, which is the ordinary retirement. So we ignore the intervening paragraphs of the memorandum? I don't think he ignored them. I think that he determined that the act of the township attorney at the time in filing the charges in June and not prosecuting them was not a material breach of the contract. It allowed the contract to be performed by both parties, which they did. The township did not withdraw its involuntary disability application. And the moment they found out that it was granted, they notified Mr. Toriello so that he could fulfill the second portion of the agreement, which was he filed the ordinary retirement. Did the disciplinary charge that was filed, you said to preserve it, had it expired before the disability pension determination had been made? Long before. It was filed in June of… Okay, so then why was it filed at all? You filed it and let it expire. Your Honor, I can't explain it to you. I wasn't the town attorney. I don't know why it was filed, and I don't know why. In filing it, it looks to me, if you read the agreement, it's a breach of the agreement. And my argument is that even if you deem it a breach, it's not a material breach, and I don't believe it is a breach. Well, isn't materiality an issue of fact for the jury? The issue of materiality is an issue of fact. But you don't think it's material. It doesn't mean that it's not material. I don't think it's a breach. I don't believe it's a breach of the agreement. Wait a minute. You said even if it was a breach. I understood you. You said even if it had been a breach, it wasn't a material breach. I asked you whether materiality is an issue of fact, and you said yes. So doesn't that mean that the district court could not have decided this on a motion to discontract, on a summary judgment, really, without there being a material issue of fact under an issue? Materiality is an issue of fact. The issue, maybe I misspoke. What I was saying is I don't believe that there was a breach of the agreement at all. Therefore, the district court was able to render an opinion based on reading the four quarters of the contract. He really didn't have to withdraw his appeal. If you look at paragraphs six of the agreement, paragraphs two, three, and four only kick in if an involuntary retirement is not granted. So as soon as the township filed for involuntary disability pension, he withdrew his appeal of the disciplinary charges. He didn't have to do that until after the involuntary disability was denied, correct? That's correct. And under that theory, Your Honor, looking at the contract in that way, when paragraph six comes in, two, three, and four don't kick in until you get to paragraph six. That's right. Well, two, three, and four, the discipline that had been filed in June of 2004 was not. It was time barred because under 14147, the 30 days after they'd been filed had elapsed. Okay. Thank you. Your red light is on. Thank you. We'll hear the rebuttal. Thank you, Your Honor. I'll try to be very brief. Well, you have three minutes. Yes. It can't be longer than that. And I'd like to perhaps modify my earlier statement about Mr. Giacobbi's wisdom. Well, we can't. You know, the moving finger. Maybe he's gained wisdom. He still argues well. I just don't agree with his points. And I think it is important to correct some both errors of fact and law. Paragraph four of the agreement, which is in several places in the appendix, but also in ADPA, says the county agrees to dismiss any other charges against Torriello and all pending investigations or disciplinary matters will be closed. The pending investigations meant not ones that had already resulted in charges because it uses a disjunctive. There were either pending investigations or charges. Both are to be done away with. And they're to be done away with, with all due respect, Judge Barry, not upon the occurrence of paragraph six. But they're supposed to be done away with in sequence. They're supposed to, the charges are supposed to be done away with. It's not what it says. It says in paragraph, in the event an involuntary retirement is not granted, Torriello will file for an order and provisions two, three, and four will apply. Again, it's ambiguous. Right. Exactly. I read it this way. You say, well, maybe it also applies. It doesn't say they can't apply. Right. Exactly. That's all I was stating. It was a, Judge Martini decided as a matter of law to use the interpretation you hypothesized to Mr. Giacobbe. My interpretation is that they still apply. It's just, I would argue, even more logical. But that's not an issue you have to reach. It's certainly ambiguous. Moreover, defendants say that we filed a motion for partial summary judgment on the contract. That is not correct. We filed a motion for partial summary judgment based only on our due process claim. The defendants moved, cross-moved for specific performance. We did not rely upon the contract. We relied upon, and as Your Honor correctly pointed out, as I'm arguing due process, Judge Martini, as did you, said, Mr. Lehman, get to the waiver issue. Get to the memorandum of understanding. That's their argument, not ours. But having raised that argument, we argued vehemently that it was a question of fact as to whether or not the agreement had been breached, whether that breach was material, and whether that breach excused our performance, any future performance. All of those are fact questions. At the risk of perhaps going one step too far, well, first let me address the retaliation claim. The retaliation claim, based upon his First Amendment rights as the union president, is separate and apart from the question of whether he was properly terminated. The issue of whether the township was motivated by retaliation for him having been the union president is triable even if the termination is ultimately upheld because it's like a hostile work environment versus a termination case. One can be discriminated, one can have a hostile work environment for sex or race or age for which one is entitled to damages even if one is ultimately terminated for a legitimate reason. That period of time in which the hostility occurs is remedial. Thank you very much. Thank you. Thank you. We will take the case under advisement, and we will move to the last case we argue today, and that is